RIVER BEND COMMUNITY UNIT SCHOOL DISTRICT No. 2, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Third District   No. 3—91—0619

Opinion filed July 30, 1992.

Alice M. Ralph, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, of Arlington Heights (Bennet Rodick, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Katz, Friedman, Schur & Eagle, of Chicago (Stephen Katz, of counsel), for respondent Virginia Ray.

JUSTICE GORMAN delivered the opinion of the court:

The petitioner is a school district which has a policy forbidding intradistrict faculty transfers that would result in one spouse directly supervising another. An employee claimed that this constitutes unlawful discrimination on the basis of marital status after she was denied a transfer. The Illinois Human Rights Commission agreed and found the petitioner guilty of discrimination. We affirm.

River Bend Community Unit School District No. 2 (the District) is located in Whiteside County. The District operates four schools: (1) Fulton Elementary School (grades kindergarten through five); (2) Fulton Junior High School (grades six through eight); (3) Albany Elementary School (grades kindergarten through eight); and (4) Fulton High School (grades 9 through 12).

Virginia Ray has been employed by the District since 1966. She taught fifth grade at Fulton Junior High until 1980, when that grade level was moved to Fulton Elementary. From 1980 through 1983, Mrs. Ray was assigned to the sixth grade at Fulton Junior High.

Ben Ray is Virginia's husband and is also an employee of the District. From 1966 through 1970, he was the principal at Fulton Junior High. He was then assigned to Fulton Elementary.

In 1981, the River Bend Board of Education adopted a policy (Policy 4112) regarding assignments and transfers, which states as follows:

### "CERTIFIED PERSONNEL-ASSIGNMENT AND TRANSFER

The teaching staff of the River Bend Schools shall be assigned to particular buildings by the Superintendent.

Reassignment may be made when, in the judgment of the Superintendent, such reassignment or transfer is for the good of the school system.

Teachers may apply for reassignment, in writing, to the Superintendent. The judgment of the Superintendent and the Board is final.

No request will be granted which would place a spouse under the direct supervision of his/her spouse."

In spring of 1983, River Bend reduced staff and combined the principal positions at Fulton Elementary and Fulton Junior High. These two schools shared the same campus but were not in the same building. Mr. Ray was then assigned to act as principal for both schools, which made him Mrs. Ray's supervisor.

Pursuant to Policy 4112, the District then transferred Mrs. Ray to Albany Elementary. She was given her choice of teaching either third or fifth grade at Albany. When she indicated that she would prefer not to choose her position, she was assigned to teach third grade. Mrs. Ray's rate of pay, seniority and benefits were unaffected by the transfer.

In March of 1984, Mrs. Ray wrote to the District's then superintendent, Dr. Martin Kinert, requesting to be transferred to a fifth-grade position at Fulton Elementary. Dr. Kinert rejected the request.

Mrs. Ray thereafter filed a complaint with the Illinois Department of Human Rights, alleging that she had been discriminated against on the basis of her sex and marital status. (Ill. Rev. Stat. 1991, ch. 68, pars. 1—103, 2—102.) The Human Rights Commission (Commission) issued a complaint of civil rights violation and a hearing was held before Administrative Law Judge Richard J. Gonzalez.

In Gonzalez's recommended order and decision, he rejected both claims of sex and marital status discrimination. He found that Mrs. Ray had presented a *prima facie* case of marital status discrimination based on *In re Burton & Allied Chemical Corp.* (1984), 13 Ill. HRC Rep. 246. However, Gonzalez also determined that "given [the District's] structure and mode of operation, it is a bona fide occupational qualification [BFOQ] that a teacher within the system not be married to his or her principal/supervisor." Accordingly, he recommended dismissing the complaint with prejudice.

A three-member panel of the Commission affirmed the dismissal of the sex discrimination claim. The panel, though, rejected Gonzalez's analysis and found that Mrs. Ray had proven a valid case of marital status discrimination and that the policy was not a BFOQ.

The District filed a petition for rehearing by the full Commission which was granted. Upon rehearing, the Commission found that the statutory ban on marital status discrimination includes a ban on discrimination based on the spouse's identity, and that the District's policy forbidding a teacher from transferring to a school where her spouse is the principal does not constitute a BFOQ as that term is

used under the Human Rights Act. The District then petitioned this court for review.

The primary question presented on appeal is whether the definition of "marital status" includes the identity of one's spouse or whether that phrase refers solely to the condition of being married or single.

The Human Rights Act prohibits, *inter alia*, unlawful discrimination based on a person's marital status. Marital status is statutorily defined as "the legal status of being married, single, separated, divorced or widowed." Ill. Rev. Stat. 1991, ch. 68, par. 1—103(J).

The District argues that the Commission impermissibly expanded the definition beyond the statute's plain language. It claims that "marital status" only refers to the condition of being married or single, but does not include the identity of the spouse.

This is a case of first impression in the Illinois courts. The Commission addressed this exact issue in a prior case and found that "marital status" does include the spouse's identity. *In re Burton & Allied Chemical Corp.* (1984), 13 Ill. HRC Rep. 246.

■■ In *Burton*, the Commission examined the two possible interpretations for the phrase "marital status." It found both that the interpretations were reasonable and that the statute could be read either in the broad sense or the narrow sense. The Commission determined that the broader definition was more in line with the legislative purpose underlying the Human Rights Act (Act) and with the supreme court's mandate that the Act is remedial in nature and is to be liberally construed. (*Board of Trustees of Community College District No. 508 v. Human Rights Comm'n* (1981), 88 Ill. 2d 22, 429 N.E.2d 1207.) The Commission expressly reaffirmed *Burton* in finding unlawful discrimination here.

Both parties' positions find support in other States' interpretations of similar laws. (See generally Annot., *What Constitutes Employment Discrimination on Basis of "Marital Status" for Purposes of State Civil Rights Laws*, 44 A.L.R.4th 1044 (1986).) Some courts have found that a prohibition on marital status discrimination does not extend to the identity of a person's spouse. (See, *e.g.*, *Whirlpool Corp. v. Civil Rights Comm'n* (1986), 425 Mich. 527, 390 N.W.2d 625; *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board* (1980), 51 N.Y.2d 506, 415 N.E.2d 950; *Thomson v. Sanborn's Motor Express, Inc.* (1977), 154 N.J. Super. 555, 382 A.2d 53.) Other States, however, have concluded that proscribed conduct does include discrimination based on the spouse's identity. See, *e.g.*, *Ross v. Stouffer Hotel Co. (Hawaii) Ltd.* (1991), 72 Haw. 350, 816 P.2d 302;

*Thompson v. Board of Trustees, School District No. 12* (1981), 192 Mont. 266, 627 P.2d 1229; *Kraft, Inc. v. State* (Minn. 1979), 284 N.W.2d 386; *Washington Water Power Co. v. Washington State Human Rights Comm'n* (1978), 91 Wash. 2d 62, 586 P.2d 1149.

Two scholarly comments on the subject have also opined that marital status discrimination does include discrimination based on the identity of one's spouse. Wexler, *Husbands & Wives: The Uneasy Case for Antinepotism Rules*, 62 B.U.L. Rev. 75 (1982); Note, *Challenging No-Spouse Employment Policies as Marital Status Discrimination: A Balancing Approach*, 33 Wayne L. Rev. 1111 (1987).

This is clearly an issue where both interpretations are reasonable. That fact is evidenced not only by the split of authority among the States, but by the fact that several of the other States' decisions were the result of closely divided courts.

■ A reasonable interpretation of a statute by an agency charged with administration and enforcement of that statute is entitled to great weight. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) Moreover, while an agency's long-term adherence to a particular interpretation of a statute is not a prerequisite to judicial deference, it adds weight to the validity of the agency construction. *Yu v. Clayton* (1986), 147 Ill. App. 3d 350, 497 N.E.2d 1278.

The District contends that the expansion of the definition of marital status is a decision for the legislature, not the Commission or the courts. The District argues that the plain meaning of marital status does not encompass the identity of one's spouse and that had the legislature intended to prevent that type of discrimination, it could have expressly done so, which, in fact, some States have done. *E.g.* Minn. Stat. Ann. §363.01 (West 1989).

The Commission notes that the General Assembly has amended the Human Rights Act numerous times since the *Burton* decision but has not overruled the Commission's interpretation of the disputed phrase or amended the statutory definition of "marital status" in any way. Therefore, the Commission argues, it must be presumed that the legislature was aware of the construction of the statute and acquiesced in that interpretation. (*Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 442 N.E.2d 1374.) That, coupled with the supreme court's mandate that the Act is to be liberally construed (*Board of Trustees of Community College District No. 508 v. Human Rights Comm'n* (1981), 88 Ill. 2d 22, 429 N.E.2d 1207), leads the Commission to its conclusion that *Burton's* interpretation of the Act should be upheld.

In its order, the Commission stated:

"We believe the public policy of this state as declared in the Act, that all individuals should be free from discrimination because of marital status, supports our decision. We, therefore, find that a policy which subjects an employee to adverse consequences because of his or her marriage to a particular individual is 'marital status' discrimination within the meaning of the Act and is the type of discrimination the Illinois legislature intended the Act to prohibit."

The Hawaii Supreme Court was recently faced with similar arguments. (*Ross v. Stouffer Hotel Co. (Hawaii) Ltd.* (1991), 72 Haw. 350, 816 P.2d 302.) The relevant statute defined "marital status" as "the state of being married or being single." (Haw. Rev. Stat. §378—1 (1985).) That court noted the split of authority among the States and then rejected the narrow construction of the phrase in favor of one which included the identity of one's spouse.

Policy 4112 is clearly triggered by a party's marital status and imposes a direct burden upon marriage. A person who remains single would not be affected by the rule. The Commission's finding that discrimination based on the identity of one's spouse does fall within the conduct proscribed by the Human Rights Act is not unreasonable. We therefore hold that the Act does prohibit discrimination based on the spouse's identity and that Policy 4112 does fall within the ambit of the Act.

■ The District next argues that even if this court accepts the Commission's interpretation of "marital status," Policy 4112 qualifies as a *bona fide* occupational qualification (BFOQ).

The Act provides that BFOQs are exempt from the discrimination rules. (Ill. Rev. Stat. 1991, ch. 68, par. 2—104(A).) A BFOQ exemption is available if the employer shows that the employment qualification is reasonably related to the essential operation of the job involved and if there is a factual basis for believing that all or substantially all persons meeting the qualification would be unable to properly perform the duties of the job. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.) The exemption also applies when it is shown that it is impossible or impracticable to determine job fitness on an individual basis. *Mikusch*, 138 Ill. 2d at 251, 562 N.E.2d at 172.

This exemption is a narrow one. "Under traditional analysis the BFOQ defense is available only when the employer can show that no one in the excluded class is capable of performing the duties essential to the job." *City of Belleville v. Human Rights Comm'n* (1988), 167 Ill. App. 3d 834, 841, 522 N.E.2d 268, 273.

The District presented expert testimony regarding the problems that can arise when one spouse supervises another, especially in a school context. The District also points to the various supervisory and administrative functions which a principal exercises over a teacher.

Mrs. Ray presented evidence that there had been no problems during the years (1966-70) when Mr. Ray had been her principal. In addition, the problems which the policy seeks to forestall could arise in many other types of close, personal relationships which are not addressed by the policy. For example, the cohabitation of two people would implicate the same potential problems as would a marriage, yet this relationship would be unaffected by the policy. Similarly, if a principal and a teacher were to marry, a plain reading of the policy would not require that one of the two be transferred out. The policy only applies to transfers which would result in one spouse supervising another. The Commission expressly declined to decide whether a more inclusive prohibition would qualify as a BFOQ. Instead, it held that Policy 4112, which merely forbids *transferring* a teacher to a school where his or her spouse is the supervisor, does not constitute a BFOQ.

The District had the burden of showing that one spouse is unable to effectively supervise another. To the contrary, the undisputed evidence showed that there had been no problems when Mr. Ray had been Mrs. Ray's principal. Accordingly, we cannot say that the Commission's rejection of the BFOQ defense is against the manifest weight of the evidence.

Finally, the District contends that the Commission erred in finding that there was a position available into which Mrs. Ray could transfer. The District argues that there was no fifth-grade position available at Fulton Elementary when Mrs. Ray requested transfer and that was the reason her request was denied.

It should be noted that Mrs. Ray does not challenge the original transfer from Fulton Junior High to Albany Elementary. She only alleges that the refusal to transfer her back to Fulton Elementary was discriminatory.

The District argues that the Commission failed to differentiate between voluntary and involuntary reassignments. Mrs. Ray's request was for a fifth-grade position at Fulton Elementary. Dr. Kinert testified that it was District policy to consider a transfer request only for the specific position which the teacher requested. There was also evidence that this process was incorporated into the teachers' contract with the District. It is the District's position that it would not involuntarily transfer one teacher merely to accommodate the voluntary re-

quest of another teacher. The District thus argues that it would have rejected the request regardless of Policy 4112 because no fifth-grade position was then available at Fulton Elementary.

Mrs. Ray presented evidence of several other intradistrict transfers which caused openings at many different grade levels at the various schools.

The Commission's decision did not directly address this question. The administrative law judge, however, found the vacancy question to be essentially a nonissue. He stated that because of Policy 4112, Dr. Kinert failed to give Mrs. Ray's request serious consideration or to present the request to the school board for consideration. Thus, it was the District's discriminatory policy which directly led to the denial of the transfer request.

■ This is a factual question on which the District bore the burden of proof. Once a *prima facie* case of discrimination has been presented, the employer must articulate legitimate, nondiscriminatory reasons for taking the action. (*R.R. Donnelley & Sons Co. v. Human Rights Comm'n* (1991), 219 Ill. App. 3d 789, 579 N.E.2d 1144.) The complainant can then rebut that evidence by showing that the articulated reason was merely a pretext for the unlawful discrimination.

There was evidence presented that the District enjoyed some degree of flexibility in making assignments and that Mrs. Ray's request was not given serious consideration because of Policy 4112. Because the transfer request was not adequately considered, it is difficult to determine whether or not there would have been a vacancy. Since the District has the burden of proving that no vacancy existed, we cannot say that the finding that a vacancy did exist is contrary to the manifest weight of the evidence.

For the aforementioned reasons, we affirm the decision of the Illinois Human Rights Commission.

Affirmed.

STOUDER and SLATER, JJ., concur.