JIM BOADEN *et al.*, Petitioners, v. THE DEPARTMENT OF LAW EN-
FORCEMENT *et al.*, Respondents.

Fourth District    No. 4—93—0586

Argued April 12, 1994.—Opinion filed November 8, 1994.

Mary Lee Leahy (argued) and Cheryl Redfield Jansen, both of Leahy Law Offices, of Springfield, for petitioners.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General (argued), of counsel), for respondent Human Rights Commission.

Robert V. Ogren (argued), of Stratton, Dobbs & Nardulli, of Springfield, for respondent Department of Law Enforcement, State Police.

JUSTICE STEIGMANN delivered the opinion of the court:

Petitioners, Jim Boaden and Colleen Boaden, appeal the decision of the Illinois Human Rights Commission (Commission) dismissing their complaints of marital status discrimination. (In re Boaden & State of Illinois, Department of Law Enforcement, State Police (June 11, 1993), _____ Ill. Hum. Rights Comm'n Rep. _____ (HRC Nos. 1985—SN—0056, 1985—SN—0057).) The Commission determined that unlawful discrimination based on "marital status" included discrimination based upon the identity of an employee's spouse, but that the actions taken by the State Police had not altered the terms or conditions of petitioners' employment in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1992)).

Petitioners appeal, arguing that (1) shift and geographical work location are "terms" or "conditions of employment" within the meaning of section 2—102(A) of the Act (775 ILCS 5/2—102(A) (West 1992)), and (2) the duration of discrimination is not a threshold issue for a finding of discrimination. The Illinois Department of Law Enforcement, State Police, and the Commission respond that no violation of the Act occurred because petitioners' shift and work location were not altered and the choice of with whom one works is not a term or condition of employment. The State Police further contends that "marital status" discrimination within the meaning of the Act does not extend to employment decisions based upon the identity of one's spouse.

We affirm, although for reasons other than those cited by the Commission.

## I. BACKGROUND

The State Police is organized into a number of districts composed of several counties. Each county is a designated patrol area and is patrolled by a three-person squad during each of three daily shifts. In Christian County, two of the squads rotate the morning and evening shifts at two-week intervals while the midnight shift remains constant. Each member of a squad patrols alone in his or her police car.

In early 1984, petitioners Jim Boaden and Colleen Boaden (then Gannon) were State troopers assigned to the same squad for the Christian County patrol area. In May 1984, they informed their supervisor of their plans to marry; he in turn informed Captain Ryan, the district commander. Ryan told petitioners that an unwritten policy existed which prohibited spouses from working in the same squad, patrolling the same area at the same time. His stated reason for the policy was a fear that married troopers might not react with objectivity if one were injured, might present supervisory problems, and might become dissatisfied with the arrangement because troopers on the same squad did not have the same vacation and days off. In addition, Ryan was concerned that their credibility could be questioned as witnesses in court or internal investigations. Ryan offered Jim three options for squad changes: (1) change to a shift opposite the one worked by Colleen but remain on patrol in Christian County; (2) patrol in Sangamon County on the same shift with the same days off; or (3) patrol in Sangamon County under a different supervisor on the same shift with the same vacation and days off. Jim elected to change to a different squad on an opposite shift from Colleen, but to remain on patrol in Christian County. The change went into effect about a week prior to petitioners' marriage on July 3, 1984; thereafter, they were on their honeymoon for most of July.

In early August, petitioners met several times with their supervisors in unsuccessful attempts to be assigned to the same shift. On August 16, 1984, they filed separate charges with the Department of Human Rights (Department), alleging that they had been subject to unequal terms and conditions of employment based upon marital status. In September 1984, the State Police rescinded its policy prohibiting spouses from sharing the same shift and patrol location, and petitioners resumed working the same squad in Christian County by mid-October 1984.

Following a hearing as to liability only, the administrative law judge (ALJ) found that under the binding precedent of *Burton & Allied Chemical Corp.* (1984), 13 Ill. Hum. Rights Comm'n Rep. 246, the State Police admission that Jim's squad transfer occurred because of marriage constituted an admission of marital status discrimination. He found that the justifications given for the policy were based upon stereotypical assumptions lacking supporting evidence. In February 1989, the ALJ recommended that petitioners' complaints be sustained on the basis that the terms and conditions of petitioners' employment were altered as a result of their marital status. He specifically found as follows:

"Many people do not particularly care with whom they work.

Others care a great deal. But whether there is concern or not, with whom one works is as much a condition of employment as where and when one works."

A second ALJ conducted a hearing on damages and adopted the findings of the first ALJ. She recommended that the Commission award damages and attorney fees to both petitioners based upon a violation of the Act by the State Police. Colleen was awarded $1,620.12 for professional counseling, medication, and travel, and $8,100.60 for emotional injury caused by the shift separation. Jim was awarded $3,000 for emotional injury caused from witnessing Colleen's emotional difficulty that resulted from the shift separation. In addition, the petitioners were awarded attorney fees and costs in the sum of $12,351.90.

The State Police filed exceptions to the recommended order. In June 1993, a three-member panel of the Commission rejected the State Police argument that its antinepotism policy was not marital status discrimination because it applied to all related persons. Relying on *River Bend Community Unit School District No. 2 v. Human Rights Comm'n* (1992), 232 Ill. App. 3d 838, 597 N.E.2d 842, the Commission concluded that marital status does include the identity of an employee's spouse and noted that had petitioners not married, no action would have been taken against them. Citing *Brewington v. Illinois Department of Corrections* (1987), 161 Ill. App. 3d 54, 513 N.E.2d 1056, the Commission further noted that while a shift change was marital status discrimination within the meaning of the Act, the identity of co-workers was never considered a term or condition of employment. (See 775 ILCS 5/2—102(A) (West 1992).) The Commission also pointed out that petitioners had not been assigned to a different shift than the ones they had been working (only the rotational sequence was affected) and were only deprived of the right to work together in the same squad, a limitation rescinded less than three months after their honeymoon. Accordingly, the Commission found no violation of the Act.

## II. DOES "MARITAL STATUS" DISCRIMINATION PROHIBIT ACTS BASED UPON IDENTITY OF ONE'S SPOUSE?

Petitioners and the Commission urge this court to affirm the Commission's interpretation that the statutory provisions prohibiting discrimination based upon marital status encompass not only acts based upon status, *i.e.*, *whether* one is married or not, but also acts based upon the identity of one's spouse, *i.e.*, *to whom* one is married. Respondent State Police contends that inclusion of spousal identity as a component of marital status improperly expands coverage of the

Act beyond the statutory definition stated in section 1—103(J) of the Act, and asks this court to decline to follow the Third District Appellate Court's decision in *River Bend* (232 Ill. App. 3d at 844, 597 N.E.2d at 846), which affirmed the Commission's interpretation.

### A. *Standard of Review*

■ The factual findings of an administrative agency are treated as *prima facie* true and correct. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885; 735 ILCS 5/3—110 (West 1992).) The reviewing court must affirm the Commission's findings of fact unless they are contrary to the manifest weight of the evidence. (775 ILCS 5/8—111(A)(2) (West 1992).) However, the same deference is not accorded an agency's conclusions of law, such as the erroneous construction of a statute or the legal effect of factual findings. (*Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365, 504 N.E.2d 89, 93-94.) Although courts will generally defer to an agency's interpretation of a statute it is charged with administering (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536, 508 N.E.2d 1058, 1062), the agency's interpretation is not binding and will be rejected if erroneous (*Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 285, 595 N.E.2d 1068, 1070).

### B. *Statutory Provisions*

■ The Act prohibits discrimination based upon "marital status." (775 ILCS 5/1—102(A) (West 1992).) Section 1—103(J) of the Act provides that " 'Marital status' means the legal status of being married, single, separated, divorced or widowed." (775 ILCS 5/1—103(J) (West 1992).) Under section 2—102(A) of the Act, a civil rights violation occurs when:

> "[A]ny employer *** [acts] with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2—102(A) (West 1992).

### C. *Illinois Authority*

In reaching its conclusion, the Commission relied on its earlier decision in *Burton* as binding precedent. In *Burton*, the complainant married her immediate supervisor and was subsequently reassigned to a different position in the same department pursuant to the employer's policy prohibiting an employee from being supervised by a spouse. When the complainant refused to accept reassignment, she was discharged. The Commission acknowledged that opposing interpretations based upon the language of section 2—102(J) of the

Act were both reasonable. Under one view, because the complainant's marriage itself brought her within the terms of the policy and she would not have been treated differently had she remained single, the policy led to discrimination based upon her marital status. Under an opposing view, had the complainant married anyone other than her supervisor, she would not have been subject to the policy. The Commission noted that discriminatory treatment engendered by an employee's marriage to a particular individual was based upon stereotypical assumptions irrelevant to the employment situation, the same type of evil intended to be remedied by the Act in prohibiting discrimination directed toward married individuals as a class. Accordingly, the Commission determined that the Act's prohibition of "marital status" discrimination includes acts based upon the identity of the person to whom an individual is married. (*Burton*, 13 Ill. Hum. Rights Comm'n Rep. at 252-55.) The Commission further noted that its determination was in keeping with the supreme court's view that the Act was remedial legislation to be construed liberally to achieve its purpose. See *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n* (1981), 88 Ill. 2d 22, 429 N.E.2d 1207.

In *River Bend*, a school district implemented a policy denying teacher reassignment requests if a transfer would place a teacher under the direct supervision of his or her spouse. When a teacher's husband was made principal of the school in which she taught, the teacher was transferred to another school. Upon the refusal of her request for reassignment back to her former school, she filed a complaint alleging discrimination based upon marital status. The Commission reaffirmed the definition of "marital status" set forth in *Burton*, and concluded that the school district's "no spouse" rule amounted to a *per se* violation of the Act. (*Ray & River Bend Community Unit School District No. 2* (1988), 45 Ill. Hum. Rights Comm'n Rep. 257, 262.) Following an appeal by the school district, the Third District Appellate Court determined that the school district's policy was triggered by an employee's marital status and imposed a direct burden upon marriage. The court concluded that the Commission's interpretation of the statute was not unreasonable and held that the Act prohibits discrimination based upon a spouse's identity. *River Bend*, 232 Ill. App. 3d at 844, 597 N.E.2d at 846.

### D. *Other Jurisdictions*

Both the Commission and the State Police cite decisions in other jurisdictions interpreting State statutes prohibiting discrimination based upon "marital status." The courts of four States have adopted

an expansive view of the scope of "marital status" to include the identity of an employee's spouse, supported in some measure by the inference that an opposing interpretation might force spouses to choose between marriage and employment. *Ross v. Stouffer Hotel Co. (Haw.) Ltd.* (1991), 72 Haw. 350, 816 P.2d 302; *Thompson v. Board of Trustees, School District No. 12* (1981), 192 Mont. 266, 627 P.2d 1229 (holding "marital status" discrimination includes identity and occupation of spouse); *Kraft, Inc. v. State* (Minn. 1979), 284 N.W.2d 386; *Washington Water Power Co. v. Washington State Human Rights Comm'n* (1978), 91 Wash. 2d 62, 586 P.2d 1149 (holding that agency had authority to promulgate rule defining "marital status" discrimination to include discrimination based upon marital status, identity of spouse, or spouse's occupation).

Two other States have concluded that "marital status" does not encompass discrimination based solely upon the identity of a person's spouse (*Whirlpool Corp. v. Civil Rights Comm'n* (1986), 425 Mich. 527, 390 N.W.2d 625; *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board* (1980), 51 N.Y.2d 506, 415 N.E.2d 950), and a third has concluded that a no-relatives policy does not constitute unlawful discrimination based upon marital status (*Thomson v. Sanborn's Motor Express, Inc.* (1977), 154 N.J. Super. 555, 382 A.2d 53). These latter decisions generally rest on the view that the statutory language refers to the general classification of marital status as a status, rather than to spousal identity, and thus the legislature would not have enlarged the proscription and extended a right to be employed by the same employer as one's spouse without a clearer expression of its intent. The State Police, in urging support for this view, claims that adherence to *River Bend* will subvert the ability of industries to protect trade secrets and the ability of other professional associations to avoid conflicts of interest.

### E. *Analysis*

Despite the policy rationales advanced by each of the parties, the issue before us is one of statutory construction; accordingly, we must focus on the language of the statute itself. (*State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 540-41, 605 N.E.2d 539, 542.) Legislative intent is the controlling inquiry in construing a statute, and the statutory language is the best indication of that intent. (*Collins v. Board of Trustees of the Fireman's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253.) Statutory provisions must be read as a whole, and no word or paragraph should be interpreted so as to be rendered meaningless. (*Collins*, 155 Ill. 2d at 111, 610 N.E.2d at 1253.) When a statute defines its own terms,

those terms must be construed according to the definitions given to them. *Beecher Medical Center, Inc. v. Turnock* (1990), 207 Ill. App. 3d 751, 754, 566 N.E.2d 445, 447.

■ The Act includes a list of definitions for interpreting its terms. "Marital status" is defined as "the legal status of being married, single, separated, divorced or widowed." (775 ILCS 5/1—103(J) (West 1992).) The express reference to "legal status" and its placement in the definition of "marital status" indicates that the legislature intended to limit the scope of unlawful marital status discrimination to the relation an individual bears to the marital state. "Status" is defined as a "state or condition; social position. The legal relation of individual to [the] rest of the community." (Black's Law Dictionary 1410 (6th ed. 1990); see also Webster's Third New International Dictionary 2230 (1976).) Thus, the *identity* of an individual's spouse has no relevance to his or her legal status.

■ If the legislature intended to proscribe policies based upon an individual's marital relationship to another, it would have stated as much in express terms. We find no reason to insert—under the guise of determining legislative intent—what the legislature left out. We therefore decline to follow *River Bend*, and we reject the Commission's statutory interpretation that marital status discrimination includes acts based upon the identity of a spouse. Accordingly, we hold that no-spouse policies precluding employment on the basis of spousal identity do not constitute unlawful discrimination based upon marital status.

Although the Commission erroneously concluded marital status discrimination occurred in this case, it nevertheless came to the correct result and dismissed petitioners' charges and complaints. Because we review the order entered, not the reasoning underlying it, we may affirm the decision of an administrative agency when justified in law for any reason. (*Cf. Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 350, 437 N.E.2d 930, 933; 134 Ill. 2d R. 366(a)(5).) In light of our holding, we need not address other issues petitioners raised.

## III. CONCLUSION

For the reasons stated, we affirm the order and decision of the Commission dismissing petitioners' complaints.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.