NO. 4-95-1013

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

IN THE MATTER OF THE APPLICATION OF THE  )   Appeal from

COUNTY COLLECTOR FOR DELINQUENT TAXES    )   Circuit Court of

PETITION OF:  DENNIS D. BALLINGER,       )   Macon County

Petitioner-Appellant,          )   No. 95TX182

v.                             )

HICKORY POINT BANK & TRUST, VERNON H.    )

HOUCHEN, Bankruptcy Trustee, and         )

Order for Sale in Error filed by CATHY   )

L. ASHBY, Macon County Tax Collector and )   Honorable 

LARRY WARD,                              )   John K. Greanias,

Respondents-Appellees.         )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Respondents, Hickory Point Bank and Trust (Hickory Point), Vernon Houchen, bankruptcy trustee, and Cathy L. Ashby, Macon County tax collec­tor, filed motions to set aside a tax sale and requested a sale in error under section 21-310 of the Proper­ty Tax Code.  35 ILCS 200/21-310 (West 1994).  They argued the own­ers of the home in­volved in the tax sale were in bankruptcy at the time of the sale and an automatic stay was in effect prohib­iting the tax sale from taking place.  The trial court vacated the order for tax deed and granted the petition for sale in er­ror.  Dennis Ballinger, peti­tioner, was the tax purchaser and has appealed the judgment of the trial court.  We affirm.

On July 7, 1992, Larry and Nancy Ward filed for bank­ruptcy protection under chapter 13 of the Bankruptcy Code.  11 U.S.C. §101 
et
 
seq
. (1988).  The Wards later moved to convert their bankruptcy action to one under chapter 11 of the Bankruptcy

Code.  On Octo­ber 13, 1992, the bankruptcy judge ordered the Wards to supply certain information and pay a filing fee in order to con­vert to a chapter 11 proceeding.  When the Wards failed to file the re­quired fee, their case was dismissed on October 22, 1992.  

The Wards filed a motion to reinstate their bankruptcy on October 30 and it was allowed on November 19, 1992.  A notice of commencement of case under chapter 11 was sent by the bank­rupt­cy court to all creditors on November 19, 1992.  The notice stat­ed the case was filed or converted on October 13, 1992.  The Wards later converted their chapter 11 bankruptcy proceed­ing to one under chapter 7 on March 1, 1993, and were granted a dis­charge in bankruptcy on December 6, 1993.  Prior to the dis­charge, Hick­ory Point, mortgagee of the home, requested the auto­matic stay be lifted on the Wards' home, and the request was granted by the bankruptcy court on September 23, 1993.  Sometime after that, the bank brought a foreclosure action against the Wards.

At the time the Wards originally filed their bankruptcy petition, the real estate taxes on their residence were delin­quent.  No notice was given to the Macon Coun­ty col­lec­tor of ei­ther the filing of the bankruptcy petition or its dis­missal.  The taxes on the property were sold at the annual Macon County tax sale on October 26, 1992.  Dome Tax Ser­vice was the success­ful bidder and obtained a certificate, which was as­signed to Ballinger on May 18, 1995.  On May 19 Ballinger filed a peti­tion for tax deed and forwarded required notices to various interested parties, includ­ing Hickory Point.  On October 2, 1995, the peri­od of re­demption ended without the real estate taxes being re­deemed and Ballinger filed an application for issuance of a tax deed on October 4, 1995.  Ballinger re­ceived an order issuing the tax deed that same day.

On October 23, 1995, motions for sale in error were filed by Hickory Point, Vernon Houchen, bankruptcy trustee, and Cathy Ashby, Macon County collector.  In addition, motions to set aside the order for tax deed were filed by Hickory Point and the bankruptcy trustee.

At a hearing held on December 8, 1995, the trial court dismissed the motions to compel sale in error filed by Hickory Point and the trustee.  The trial court granted the motion for sale in error filed by the Macon County collector and also the motions to set aside the tax deed.  On December 11, 1995, Ballinger filed a notice of appeal.

When a bankruptcy petition has been filed, the real property of debtors such as the Wards is protected from a tax sale by both federal and Illinois law.  Under federal law, when debtors enter bankruptcy, their assets are protected from action against them by their creditors by the provisions of an automatic stay provided by section 362 of the Bankruptcy Code.  11 U.S.C.  §362 (1994).  Subsection 362(c)(2) provides the stay shall re­main in effect 

"*** until the earliest of-

(A) the time the case is closed;

(B) the time the case is dis-

missed; or

(C) if the case is a case under 

chapter 7 of this title ***, the 

time a dis­charge is granted or denied."  

11 U.S.C. §362(c)(2) (1994).

A tax sale occurring when the automatic stay is in ef­fect, as well as any other action against a debtor's property taken by a creditor then, is void 
ab
 
initio
.  
In re Garcia
, 109 B.R. 335, 340 (Bankr. N.D. Ill. 1989); 
Richard v. City of Chica­go
, 80 B.R. 451, 453 (Bankr. N.D. Ill. 1987).  A tax sale is void while an automatic stay is in effect despite the debtors' failure to in­clude the tax debt in their chapter 13 plan (
In re Young
, 14 B.R. 809, 811 (Bankr. N.D. Ill. 1981)) because creditors are bound by the stay regard­less of notice.  
In re Greer
, 89 B.R. 757, 759 (Bankr. S.D. Ill. 1988); 
In re Ellis
, 66 B.R. 821, 823 (Bankr. N.D. Ill. 1986).   

In addition, in Illinois section 21-310 of the Property Tax Code provides the sale of property for failure to pay proper­ty taxes may be declared a sale in error only under certain cir­cumstances: 

"(a) When, upon application of the county

collector, tax purchaser, or a municipality

which owns or has owned the property ordered

sold, it appears to the satisfaction of the 

court which ordered the property sold that 

any of the following subsections are applicable,

the court shall declare the sale to be a sale

in error:

* * *

(6) prior to the tax sale a 

voluntary or involuntary petition has 

been filed by or against the legal or 

benefi­cial owner of the property

requesting relief under the provisions 

of 11 U.S.C. Chapter 7, 11, 12 or 13."

35 ILCS 200/21-310(a)(6) (West 1994).

If the Wards, as legal owners of the property in ques­tion, had filed a voluntary petition for relief in bank­ruptcy at the time of the tax sale of their property, the sale was void under the Bankruptcy Code and the Macon County collector could bring a petition for sale in error, which would be granted under the Illinois Property Tax Code.  However, in this instance, on the date of the Macon County tax sale the bankruptcy petition of the Wards had been dismissed and was not yet the subject of a motion to rein­state.  Ballinger argues the automatic stay was not in effect on the date of the tax sale and, therefore, it was not a void sale under section 362 of the Bankruptcy Code.  11 U.S.C. §362 (1994).  Fur­ther, he argues the automatic stay must be in ef­fect in order for the sale to qualify as a sale in error under section 21-310(a)(6) of the Property Tax Code.  35 ILCS 200/21-310(a)(6) (West 1994).  

In its order granting the petition for a sale in error, the trial court noted the federal courts have had a difficult time dealing with their own automatic stay rule, sometimes want­ing to apply it and sometimes not wanting to do so when a case has been dismissed and is later reinstated.  We agree with that as­sessment.

Ballinger cites several cases in support of his posi­tion, 
i.e.
, the automatic stay was not in effect during the win­dow cre­ated by the dismissal of a bankruptcy action, though it was later rein­stated.  Only one circuit court of appeals appears to have ad­dressed this issue and the rest are bankruptcy and tax courts.  In 
In re De Jesus Saez
, 721 F.2d 848 (1st Cir. 1983), the debtor filed for relief under chapter 13 of the Bankruptcy Code but, due to lack of diligence, her bankruptcy case was dis­missed.  A mort­gagee, who obtained a judgment in mortgage fore­closure pro­ceed­ings prior to the debtor filing for bankruptcy, sold the debtor's residence at auction after the bankruptcy case was dis­missed.  After the debtor's motion for reconsideration of the dismissal and rein­statement of the bankruptcy case were al­lowed, the bank­ruptcy court issued an order voiding the prior sale of the resi­dence as a violation of the automatic stay.  The district court affirmed the bankruptcy court, but the court of appeals reversed, holding that, unless specifically extended, the auto­matic stay termi­nated upon dismissal of the bankruptcy peti­tion.  
De Jesus Saez
, 721 F.2d at 851.  
Therefore, even though the bank­ruptcy petition was rein­stated, the actions of the credi­tor dur­ing the window of time between dismissal and reinstatement were not void.

Some bankruptcy courts have held to the contrary and found a motion to reinstate a dismissed bankruptcy case that is al­lowed results in treating the bankruptcy case as if the dis­missal never occurred.  
In re Lewis & Coulter, Inc.
, 159 B.R. 188, 190-91 (Bankr. W.D. Pa. 1993).  In 
Lewis & Coulter
 the debt­or had its case dis­missed on Decem­ber 22, 1992, and moved to rein­state it within the 10 days re­quired by Federal Rule of Bank­rupt­cy Proce­dure 9024.  On Febru­ary 9, 1993, the court allowed the motion to rein­state.   During the window created by the pen­dency of the rein­statement motion, a creditor-employee of the bankrupt company accrued vaca­tion time, which is considered to be an admin­istrative expense of the bank­ruptcy.  The debtor at­tempted to avoid pay­ment of the vacation pay to the employee because it accrued dur­ing the window between the dismissal and reinstatement of the bankruptcy.  The court ruled its order of dismissal should be treated as though it never existed:

"Debtor's motion of January should be con-

strued as a motion to 
vacate
 the order of De­cember 

22, 1992[,] pursuant to Federal Rule of Bankruptcy 

Procedure 9024 ***.  It sought to 'reinstate and re-

file the within case'.  

The order of February 9, 1993[,] 'relieved' 

debtor from the order entered on December 22, 1992.  

It effectively rendered the order of Decem­ber 22, 

1992, which treated the bankruptcy case as though 

it had not been filed, as a nullity.  That is to 

say, it treated the order of December 22, 1992[,] 

as though it never had been entered and rein­stated 

the bankruptcy peti­tion 
as of the date on which it original­ly had been filed
 ***."  (Emphasis in 

orig­i­nal).  
Lewis & Coulter
, 159 B.R. at 191. 

The court in 
Lewis & Coulter
 found it would be "mani­festly unjust" to reinstate the bankruptcy petition as of Decem­ber 4, 1992, without allowing the administrative claim of the employee rendering services to the bankruptcy estate during the period before the dismissal order was considered to be a nullity.  
Lewis & Coulter
, 159 B.R. at 191. 

The trial court here found the 
Lewis & Coulter
 case most persuasive.  The trial court found there was no final order on the date of the tax sale because the dismissal was later changed.  Because there was no final order, the court found the bankruptcy petition was pending on the date of the tax sale.

The decision in 
Lewis & Coulter
 has been crit­i­cized by other bankruptcy courts (see 
In re Thomas
, 194 B.R. 641, 648 n.19 (Bankr. D. Ariz. 1995)), but we find it to be per­suasive.  Bank­rupt­cy courts are courts of equity (
National Labor Relations Baord v. Bildisco & Bildisco
, 465 U.S. 513, 527, 79 L. Ed. 2d 482, 496, 104 S. Ct. 1188, 1197 (1983)) and must bal­ance the equi­ties in­volved in making deci­sions.  The bank­rupt­cy court in this case granted the Wards' motion to rein­state their case and in its order sent to notify creditors on November 19, 1992, stat­ed the case was filed or con­verted on Octo­ber 13, 1992.  Thus, the bank­ruptcy court in this case treated the Wards' bankruptcy as con­tinuously filed and, therefore, there was no window of op­por­tuni­ty for any credi­tor to take action against the Wards' proper­ty.  

There is no mention anywhere in the record as to the Wards requesting their automatic stay be reinstated after the rein­state­ment of their bankruptcy case and, yet, the bank­ruptcy court granted Hickory Point's motion to 
lift
 the stay on Sep­tem­ber 23, 1993.  Thus, the bankruptcy court treat­ed the stay as re­main­ing in effect from the original filing of the bankruptcy peti­tion.  This position comports with the leg­isla­tive pur­pose of the automatic stay, which this court has rec­og­nized to be "'to permit the debtor to organize his or her af­fairs without creditor ha­rassment and to allow orderly resolu­tion of all claims.'"  
Cole Taylor Bank v. Cole Taylor Bank
, 224 Ill. App. 3d 696, 707, 586 N.E.2d 775, 782 (1992), quoting 
Fortier v. Dona Anna Plaza Part­ners
, 747 F.2d 1324, 1330 (10th Cir. 1984).

We are not in a position to overrule the bankruptcy court's apparent determination the automatic stay remained in effect during the time between the dismissal and reinstatement of the Wards' bankruptcy petition.  Because the bankrupt­cy court treated the stay as remaining in effect, and such a posi­tion is in conformity with the stated legislative intent of al­lowing the orderly resolution of all claims against a creditor's estate, we will treat the stay as remaining in effect for purpos­es of grant­ing a petition for sale in error.

However, we do not believe section 21-310 of the Prop­erty Tax Code (35 ILCS 200/21-310 (West 1994)) actually requires an automatic stay to be in effect for a petition for sale in error to be granted.  This is a case of first impression as we found no reported cases dealing with this issue.        

Ballinger argues that, in order to qualify for a sale in error under section 21-310(a)(6), the automatic stay must be in effect at the time of a tax sale.  He points out the statute does not set any time limits on when the bankruptcy must have been filed and argues that, if the statute is read literally, a bank­ruptcy petition filed, for example, in 1985 or even earlier would cause a sale in error to be issued on a tax sale occurring in 1991 or later even if the debtors had been discharged but the bankruptcy case were still open for the purpose of administration of assets by the trustee.  Ballinger maintains the intent of the General Assembly could not possibly have been for a property owner to indefinitely delay any sale of delinquent taxes on his property by filing a petition in bankruptcy.  

Ballinger argues section 21-310 of the Property Tax Code must be read in con­junction with the Bankruptcy Code and notes the majority of bank­ruptcy cases find the existence of an auto­mat­ic stay af­fects the actions al­lowed to be taken by a cred­itor.  See 11 U.S.C. §362 (1994).

Legislative intent is the controlling inquiry in con­struing a statute and the statutory language is the best indica­tion of that intent.  
Boaden v. Department of Law Enforcement
, 267 Ill. App. 3d 645, 651, 642 N.E.2d 1330, 1335 (1994).  In constru­ing a statute, it is never proper for a court to part from its plain language by reading into a statute exceptions, limita­tions or conditions in conflict with the clearly expressed leg­isla­tive intent.  
Eagan v. Chicago Transit Authority
, 158 Ill. 2d 527, 532, 634 N.E.2d 1093, 1096 (1994).  When statutory lan­guage is clear and unambiguous, a court must enforce the law as enacted without considering other aids of construction.  
Greenview Ag Center, Inc. v. Yetter Manufacturing Co.
, 246 Ill. App. 3d 132, 136, 615 N.E.2d 395, 398 (1993).

Section 21-310(a)(6) does not refer to an automatic stay and there is nothing in the section to suggest its condition for granting a sale in error is coextensive with the automatic stay provision provided in the Bankruptcy Code.  The legislature could have declared a county collector may apply for a sale in error when the tax sale was held during the period of an automat­ic stay under the Bankruptcy Code, but it did not do so.  It ap­pears the legislature has determined a county collector need not concern herself with the ins and outs of federal bankruptcy court stays and procedures and how they affect different creditors and their claims.  The legislature has made it simple.  If a bank­ruptcy petition has been filed, a sale while that action is pend­ing is in error.  As the statute must be read reasonably, if a bankruptcy case has been ended by discharge or is no longer pend­ing for some other reason on the merits, the previous filing of a bankruptcy petition would no longer be grounds for the granting of a petition for sale in error.

The standard of proof necessary for a trial court to declare a sale in error is set forth in clear language in section 21-310 of the Property Tax Code.  35 ILCS 200/21-310 (West 1994).  The sec­tion re­quires only that "it appears to the satis­faction of the court which or­dered the property sold" that prior to the property being sold a bankruptcy petition was filed.  35 ILCS 200/21-310(a) (West 1994)
; see also 
In re Application of the Coun­ty Col­lec­tor for Judgment & Order of Sale Against Lands & Lots Re­turned Delinquent for Nonpayment of General Taxes for the Year 1986 and Prior Years--Tax Certificate No. 8600983
, 221 Ill. App. 3d 87, 88, 581 N.E.2d 715, 716 (1991).  

In this case, the Wards' bankruptcy petition had been on file for only three months at the time it was dismissed for failure to file a fee when converting to a different chapter of the Bankruptcy Code.  No motion to lift the stay had yet been heard.  Only eight days elapsed between the dismissal and a mo­tion requesting reinstatement.  The Wards' property was not kept out of a tax sale for an indefinite period of time because of the filing of their bankruptcy petition.  They originally filed their petition on July 7, 1992, and were discharged from bankruptcy on December 6, 1993.  The notice of commencement of case sent to creditors by the bankruptcy court on November 19, 1992, when it granted the Wards' motion to reinstate indicated their bankrupt­cy case was filed or converted on October 13, 1992.  Under these facts, the trial court was satisfied a bankruptcy peti­tion was 
on
 
file
 prior to the property tax sale held on October 26, 1992, and granted a sale in error based on section 21-310(a)(6) of the Property Tax Code.  35 ILCS 200/21-310(a)(6) (West 1994).

Finally, Ballinger argues Hickory Point should not be allowed to have set aside the order for tax deed granted him because it was notified after the tax sale of his interest in the property and was given an opportunity to redeem the taxes.  Ballinger argues Hickory Point was negligent in protecting its in­ter­ests by failing to redeem the real estate taxes and now is trying to use the filing of the bankruptcy petition as a means to set aside the order for tax deed.

Hickory Point filed a petition for sale in error just as the county collector did.  The trial court dismissed Hickory Point's peti­tion, however, because section 21-310(a) of the Prop­er­ty Tax Code pro­vides only a county collector, tax purchaser or a mu­nic­i­pal­i­ty that owns or has owned the property may file a peti­tion for sale in error.  35 ILCS 200/21-310(a) (West 1994).  However, the trial court granted the motion to set aside the order for tax deed filed by Hickory Point.  This result is re­quired by section 21-310 of the Property Tax Code because it pro­vides that, if a sale is de­clared to be a sale in error, the coun­ty clerk 
shall
 make entry in the tax judg­ment, sale, redemp­tion, and for­feiture record the property was errone­ously sold and shall on demand of the owner of the certifi­cate of pur­chase, refund the amount paid plus interest and costs and cancel the certificate.  35 ILCS 200/21-310 (West 1994).  

Ballinger is entitled to his money back with in­ter­est but is not entitled to a tax deed because the tax cer­tifi­cate must be canceled once the sale has been found to have been made in error.  No tax deed could possibly follow from a sale in er­ror.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.          

COOK and GREEN, JJ., concur.