(No. 54676.—

## THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Appellees.

*Opinion filed November 13, 1981.*

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Jerome J. Webb, J. Stuart Garbutt, and Judith Frank Flaherty, Assistant Attorneys General, of Chicago, of counsel), for appellees Human Rights Commission and Depart-

ment of Human Rights.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellees William J. Prince, Harold C. Messinides, and Luada Porter Estell.

JUSTICE SIMON delivered the opinion of the court:

The Federal Age Discrimination in Employment Act of 1967 prohibits compulsory retirement before the age of 70. (29 U.S.C. §§ 623, 631(a) (1979 Supp.).) There is, however, a temporary exception for tenured teachers in higher education; until July 1, 1982, they can be forced to retire at age 65. (29 U.S.C. § 631(d) (1979 Supp.).) The complainants in this case are three tenured professors from the Chicago City Colleges. They come to this court for a determination of whether the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*) counteracts the temporary exception in the Federal act and protects them by banning their compulsory retirement before the age of 70.

The complainants are now each over 65 and have been employed by the City Colleges as teachers for many years. They were scheduled for retirement, pursuant to Rule 2—19(b) of the City Colleges, at the end of the term in which each reached the age of 65. The individual complainants each filed charges with the Department of Human Rights, alleging that their involuntary retirement violated the Illinois Human Rights Act. The Department investigated and filed complaints with the Human Rights Commission pursuant to section 7—102 of the Act. Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(F).

The complaints were first heard by an administrative hearing officer under the procedures set forth in the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—106). The hearing officer concluded that the City Colleges were in violation of the Act for the following reasons: It prohibits retirement on the basis of age before an

employee reaches the age of 70; the City Colleges' rule on retirement is not in keeping with any established retirement system; and a statutory exemption that the Illinois Human Rights Act provides from certain of its prohibitions is not applicable to the three complainants. The Human Rights Commission heard the City Colleges' appeal and affirmed the order of the hearing officer, finding that it was not against the manifest weight of the evidence.

The case then moved to the circuit court of Cook County with the Commission joining the three professors as defendants. The circuit court confirmed that the Illinois Human Rights Act forbids compulsory retirement before 70, but found that the professors were being retired pursuant to an established retirement system. Turning to the question of the exemption provided by section 2—104(E)(1) of the Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 2—104(E)(1)), the circuit court judge said that he could not make sense of that provision and held it unconstitutionally vague. In the alternative, the circuit court judge declared that if the statute was constitutional, the City Colleges' retirement system was valid and eligible for the exemption. Both sides appealed directly to this court under Rule 302(a)(1) (73 Ill. 2d R. 302(a)(1)).

There are two questions to be resolved in this appeal: (1) Is involuntary retirement on the basis of age prior to age 70 a civil rights violation prohibited by the Illinois Human Rights Act? (2) If so, does section 2—104(E)(1) exempt compulsory retirement at 65 and is it constitutional?

The Act defines unlawful discrimination as: "discrimination against a person because of his or her race, color, religion, national origin, ancestry, *age*, sex, marital status, handicap or unfavorable discharge from military service ***." (Emphasis added.) Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—103(Q).

"'Age' means the chronological age of a person who is 40 but not yet 70 years old." Ill. Rev. Stat., 1980 Supp., ch.

68, par. 1—103(A).

It is a civil rights violation "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, *renewal of employment,* selection for training or apprenticeship, *discharge,* discipline, *tenure or terms, privileges or conditions of employment* on the basis of unlawful discrimination." (Emphasis added.) Ill. Rev. Stat., 1980 Supp., ch. 68, par. 2—102(A).

Does the Illinois Human Rights Act cover involuntary retirement? Retirement is not expressly included within the practices set forth in the definition of civil rights violations. But, an analysis of the broad intent of the legislature and similar employment-discrimination statutes leads to the conclusion that the Act encompasses retirement. As remedial legislation the Act should be construed liberally to effect its purpose. (*S. N. Nielsen Co. v. Public Building Com.* (1980), 81 Ill. 2d 290, 298.) In an introductory section the Act declares our State's public policy to be to "secure for all individuals within Illinois the freedom from discrimination because of *** age *** in connection with employment ***." (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—102(A).) Retirement is sufficiently connected to employment to justify including it within the broad range of discriminatory practices banned by the Act. It is inconsistent with the sweep of this public policy to so narrowly construe the section of the Act defining civil rights violations as to limit the circumstances of employment to which the Act applies.

The words "discharge," "renewal of employment," or "tenure" can be construed to embrace retirement. Involuntary retirement closely parallels the effect of a discharge or a failure to renew employment; it also deprives an employee of continued employment, and this affects tenure. Even though the word "retirement" does not appear in section 2—102(A), the omission does not mean it was intended to be excluded where its effects are so similar to the practices expressly forbidden.

This construction is supported by the interpretation given to other employment discrimination statutes which do not use the word "retirement." The Federal Age Discrimination in Employment Act, for example, makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age * * *." (29 U.S.C. § 623(a)(1) (1976).) In *United Air Lines, Inc. v. McMann* (1977), 434 U.S. 192, 54 L. Ed. 2d 402, 98 S. Ct. 444, the court held that some forced retirements are prohibited even though the Federal Act does not mention retirement. The court said, "The Act covers individuals between ages 40 and 65, 29 U.S.C. § 631, but does not prohibit all forced retirements prior to age 65; some are permitted under § 4(f)(2), 81 Stat. 603," a provision of the Act exempting certain retirement and seniority systems. (434 U.S. 192, 195, 54 L. Ed. 2d 402, 408, 98 S. Ct. 444, 446; see also *Gonsalves v. Caterpillar Tractor Co.* (7th Cir. 1980), 634 F.2d 1065; *Brennan v. Taft Broadcasting Co.* (5th Cir. 1974), 500 F.2d 212.) It was not necessary in these cases to turn to the statutory exemption permitting retirement in certain instances under the Federal act if the general prohibitory sections of that act did not already include retirement within their coverage.

It has also been held that title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e) *et seq.* (1976) covers retirement, even though that term is not explicitly mentioned in that statute. (*Bartmess v. Drewrys U.S.A., Inc.* (7th Cir. 1971), 444 F.2d 1186; *Rosen v. Public Services Electric & Gas Co.* (3d Cir. 1973), 477 F.2d 90.) These cases cited *Inland Steel Co. v. National Labor Relations Board* (7th Cir. 1948), 170 F.2d 247, which similarly concluded that retirement was encompassed by the National Labor Relations Act (29 U.S.C. 159(a) (1952)).

Finally we note that the Human Rights Act contains, like the Federal act, a provision exempting the compulsory

retirement of high-ranking, policymaking executives at age 65. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 2—104(E)(2).) This exemption provides that the Act does not prohibit:

"(2) Effecting compulsory retirement of any employee who has attained 65 years of age but not 70 years of age, and who, for the 2-year period immediately preceding retirement, is employed in a bona fide executive or a high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan, or any combination of such plans of the employer of such employee, which equals, in the aggregate, at least $27,000."

This exemption would be unnecessary if retirement were not included in the section defining civil rights violations. A statute should not be construed in a way which makes one of its provisions redundant and superfluous. *People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65.

The City Colleges point out that section 2—104(E)(2) was not adopted until 7 months after the Human Rights Act was first passed. But this does not detract from the conclusion that this amendment would be unnecessary if retirement between 40 and 70 were not embraced by the Act. If employees had no protection against involuntary retirement, why was it necessary to provide a means of such retirement for any class of employees at any age? Their retirement would simply not have been a violation under the Illinois Human Rights Act. The judiciary should not assume that the legislature engaged in a useless act in amending a statute; rather an amendment may assist in determining legislative intent with respect to provisions of the statute before its amendment. *Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 116-17.

The next inquiry is whether mandatory retirement at an age between 40 and 70 is "unlawful discrimination." Those who are subject to mandatory retirement at 65 are discrim-

inated against on the basis of their age because those who have not reached 65 are not forced to retire. The City Colleges contend that the Act permits age discrimination so long as all employees are similarly discriminated against when attaining the targeted age. Since all faculty members are subject to retirement at age 65, they argue the discrimination is permissible. The answer to this suggestion seems obvious. The Illinois Human Rights Act was designed to prevent age-based discrimination, not to authorize it so long as the discrimination was eventually applied against everyone.

For these reasons, the Illinois Human Rights Act must be interpreted as barring the pre-70 retirement of all employees except those specifically exempted. The Act, then, prohibits involuntary retirement on the basis of age.

The next question is whether there are exemptions in the statute which permit the City Colleges to enforce mandatory retirement at age 65. The City Colleges point to section 2—104(E)(1) of the Act, which provides:

"Nothing contained in this Act shall prohibit an employer *** from:

\* \* \*

(E) Merit and Retirement Systems. (1) Applying different standards of compensation, or different terms, conditions or privileges of employment pursuant to a merit or retirement system provided that such system or its administration is not used as a subterfuge for or does not have the effect of unlawful discrimination." (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 2—104(E).)

It was this provision which the circuit court found unconstitutional.

Section 2—104(E)(1) is not vague; properly interpreted it does not apply to the City Colleges' action.

The City Colleges argue that retirement itself is a "condition of employment" and that the retirement age is a "term" of any retirement system. The view they urge,

therefore, is that the City Colleges, as employer, are free to treat employees differently by requiring as a condition of employment that those who reach the age of 65 retire, so long as this different treatment of employees was pursuant to a retirement system that was not a subterfuge and did not have the effect of unlawful discrimination.

The first weakness in the City Colleges' contention is that it requires a strained construction of the words "terms" or "conditions" of employment. It is not in the *terms* of the retirement system—the retirement age, for example—that the complainants are treated differently than others. Everyone must retire at the same age. The discrimination is the retirement itself: people under 65 work, those over 65 don't. We do not think retirement, which terminates employment, can be naturally or plausibly described as a term or condition of employment.

Second, the City Colleges' position amounts to an assertion that section 2-104(E)(1) provides a full exemption for all retirement systems, or at least all existing retirement systems. But a closer look at the Act and its history shows that the section does not provide such blanket authority. As already noted, section 2—104(E)(2) grants an exemption for the mandatory retirement of high-ranking policymaking executives. If section 2—104(E)(1) already provided a blanket exemption for all mandatory retirement, section 2—104(E)(2) would have been unnecessary for that purpose. Construction of an amendment to a statute in a manner which renders it meaningless should be avoided. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107.) The sole effect of section 2—104(E)(2) would be to authorize compulsory retirement of executives *not* based on a legitimate retirement system, that is to legalize their involuntary retirement based on any criteria whatever, including, for example, race. We do not believe that such a result is what the legislature was aiming for. Section 2—104(E)(1) must therefore be given a more limited scope.

That conclusion is again strengthened by comparison with other statutes. The Federal act created an exemption for each "bona fide employee benefit plan such as a retirement *** plan, which is not a subterfuge to evade the purposes of this chapter ***." (29 U.S.C. §623(f)(2) (1979 Supp.).) As construed in *United Air Lines, Inc. v. McMann* (1977), 434 U.S. 192, 54 L. Ed. 2d 402, 98 S. Ct. 444, this provision was held to exempt retirement plans. Although the Federal statute was subsequently amended to provide that plans requiring retirement before age 70 were not exempted, the general language of the Federal act prior to its amendment contrasts with the specific provisions of the Illinois Human Rights Act.

Similarly, the predecessor statute to the Illinois Human Rights Act, the Illinois age discrimination in employment act, contained in section 3 a blanket exemption for retirement plans:

> "Nothing in this Act affects the retirement system of any employer where such system is not merely a subterfuge to evade the purpose of this Act ***." (Ill. Rev. Stat. 1979, ch. 48, par. 883.)

When the legislature adopted more limited exemptions in the form of section 2—104(E) of the Illinois Human Rights Act in place of exempting the system itself, it demonstrated its intent to abandon the broad exemption granted to retirement systems by the prior act. *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 271.

The true meaning of section 2—104(E)(1) can be discerned by comparing it with another provision in the predecessor statute. Section 3 of the former statute also provided:

> "Nothing in this Act *** precludes the varying of insurance coverage according to an employee's age." (Ill. Rev. Stat. 1977, ch. 48, par. 883.)

Comparing the former statute with the present one leads to the conclusion that the legislature in adopting the present

act meant to provide greater leeway for varying the features of the employment agreement under a retirement plan. Instead of limiting the exemption to differences in insurance coverage, as the earlier act did, the legislature granted employers leeway to offer different compensation or different terms, conditions or privileges of employment pursuant to a retirement system. The only limitation on varying these features of employment is the provision that the retirement system not be a subterfuge for or have the effect of unlawful discrimination. As thus interpreted, section 2—104(E)(1) exempts only a limited range of features which might be incorporated in a retirement system, but this does not include mandatory retirement itself.

The fact is that this section does not exempt any specific retirement plan; rather, it exempts only different standards of compensation or terms, conditions or privileges of employment applied by an employer pursuant to a plan. But, the exemption includes a proviso stating it does not reach different standards of compensation or terms, conditions or privileges of employment which have "the effect of unlawful discrimination." When the exemption is construed in this way, the Illinois Human Rights Act encourages the employment of older workers by permitting the employer to apply different standards when paying pensions to or making contributions for them so that hiring them is not more costly than hiring younger persons.

The complainants have offered examples of the kinds of different treatment under a retirement system that would fit within section 2—104(E)(1). Mandatory retirement would not, but, if, for example, an employer wanted to employ older workers, the employer could require a greater contribution to the pension fund from them. The greater contribution would be justified by the fewer years the older workers could expect to be employed before retirement and their desire to receive equal pensions upon retirement. According to the complainants in this action, the Illinois

Human Rights Act allows such a distinction in the standards of compensation, so long as the distinction is not actually a subterfuge for age discrimination, an excuse adopted by the employer to slash the take-home pay of older workers and discourage them to the extent that none will bother to apply for work at all. Or, an employer might provide different health insurance benefits to employees, with older workers receiving different benefits because of the different health risks they face. The statute would exempt such treatment from the prohibitions of the Illinois Human Rights Act.

The third weakness in the City Colleges' position is that their retirement system, even if it otherwise qualified for the section 2-104(E)(1) exemption, would run afoul of the proviso at the end of that section—that the retirement "system or its administration *** not have the effect of unlawful discrimination." The circuit court's difficulty in interpreting the statute was caused by this latter phrase. The judge felt that under the City Colleges' interpretation of section 2-104(E)(1), the Act exempted the very discrimination it was banning. He reasoned that the Act first banned all age discrimination, then exempted retirement, but finally restricted the exemption to retirements not based on age.

The proviso does not, as the circuit court thought, swallow up the whole exemption; the exemption, with its proviso, is not, therefore, meaninglessly vague. The essential intent is discernible. The focus in assessing whether applying a different standard is permitted by section 2—104(E)(1) or prohibited by that section's proviso is on the effects the system will have with the different standard incorporated into it. So long as the different standards of compensation or terms, conditions or privileges of employment, that is their overall impact, do not turn the system into one which favors or disfavors employees on the basis of age or any other unlawful discrimination, the system does not run afoul of the proviso. Thus, in the case of the differing monthly amounts contributed to a pension plan or the different

health benefits in the examples set forth above, the employees' compensation or benefits are based on age. The system is nevertheless legal because it does not have the effect of discriminating against employees based on their age. One employee may have to contribute more per month for pension benefits than another; but that is only because he will be paying for fewer months before he retires. On the whole, the effect is neutral, as would be expected of a practice based on objective considerations. The system even with the differing pension contributions is not only fair and rational, but also necessary to prevent the employer's obligation to hire without regard to age from being undermined by the exorbitant cost of hiring older people.

A compulsory retirement age, in contrast, is neither necessary nor fair. Not only is it feasible to run a retirement system without a compulsory retirement age, these teachers are members of a system that does it. The retirement system under which the City Colleges are covered is the State University Retirement System Act (Ill. Rev. Stat. 1979, ch. 108½, par. 15—101 *et seq.*). Nothing in the State University Retirement System Act requires retirement at any given age, and benefits are based not upon age but upon service; in other words, the basic pension scheme that applies to those covered by the State system operates independently of age. The compulsory retirement age is not even a feature included in the basic system. It is imposed on top of the system, by the City Colleges themselves, for no obvious reason but that the City Colleges apparently prefer younger faculty members. And it is apparent that retirement and working can hardly be considered as substantially the same status and of more or less equivalent value to the employee and cost to the employer. The effect of the City Colleges' added requirement for retirement at 65 is precisely and solely that only those under 65 may work, an effect so dramatic and arbitrary that it must be considered unlawful discrimination. Incorporating in a system a provision for

retirement of employees under 70 solely because of their age is not permitted by the exemptions allowed by section 2—104(E)(1) because it precludes the system from satisfying the mandate that a retirement system and its administration not have the effect of unlawful discrimination.

In summary, no exemptions to the Illinois Human Rights Act justified the City Colleges' action. It is therefore unnecessary to address the City Colleges' further contention that the mandatory retirement of the teachers here was pursuant to a retirement system that was not a subterfuge as defined by section 2—104(E).

The City Colleges finally assert that the Illinois Human Rights Act was meant to regulate only those retirements which were made pursuant to a retirement system adopted after the Act was passed. The City Colleges argue that the Illinois Human Rights Act did not outlaw all existing retirement systems which called for retirement at age 65. They call on this court to give prospective application to this statute only. The general rule is that a statute is deemed to operate prospectively only, and will not be given a retroactive operation unless the language of the statute is clear. (*Anderson v. Board of Education* (1945), 390 Ill. 412, 430.) But this statute is not operating retroactively. It does not make mandatory retirement at age 65 before its effective date illegal; it forbids only unlawful discrimination after that date.

There is no "grandfather clause" allowing existing illegal discrimination to continue. The situation may be compared to that under the worker's compensation statute. Proceedings under that statute are governed by the law in effect at the time of the injury. (*Wilson-Raymond Constructors Co. v. Industrial Com.* (1980), 79 Ill. 2d 45, 51.) Similarly, proceedings under the Illinois Human Rights Act should be governed by the law in effect at the time of the purported illegal job discrimination, not at the time the relationship of employment began.

36

Section 2—104(E) of the Illinois Human Rights Act is not unconstitutionally vague. Properly interpreted, it forbids the compulsory retirement of the complainants before they reach the age of 70. The circuit court reached that result, although on other grounds. Its decision is therefore affirmed.

*Judgment affirmed.*