# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286

---

| | |
|---|---|
| Caption in Supreme Court: | CITIZENS OPPOSING POLLUTION, Appellee, v. EXXONMOBIL COAL U.S.A. *et al.*, Appellants. |
| Docket No. | 111286 |
| Filed | February 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A final administrative decision approving Mining Act permit revisions could not be challenged in circuit court after expiration of the time period for administrative review; and where it was alleged that environmental conditions violated the Mining Act, a citizen suit, which could be brought as to nonpermitted activity or permit violations, was barred as to the permitted activity. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Clinton County, the Hon. William J. Becker, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part; circuit court judgment affirmed. |

Counsel on Appeal

J. Timothy Eaton, of Chicago (Shefsky & Froelich, Ltd., of counsel), and Kurt E. Reitz, Peter S. Strassner and Paul T. Sonderegger, of Belleville (Thompson Coburn LLP, of counsel), for appellant ExxonMobil Coal USA, Inc., d/b/a Monterey Coal Company.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Brian F. Barov, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Environmental Protection Agency.

Penni S. Livingston, of Fairview Heights, for appellee.

Katherine D. Hodge, Jennifer M. Martin and Alison K. Hayden, of Hodge Dwyer & Driver, of Springfield, for *amicus curiae* the Illinois Coal Association.

Lisa Madigan, Attorney General, of Springfield (Jane Elinor Notz, Deputy Solicitor General, and Brett E. Legner, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae* the Illinois Department of Natural Resources.

Jessica Dexter, of Chicago, and Nathaniel Shoaff, of San Francisco, California, for *amicus curiae* the Illinois Chapter of the Sierra Club.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 In this appeal, we are asked to determine whether a citizen suit can be brought under section 8.05(a) of the Surface Coal Mining Land Conservation and Reclamation Act (Mining Act) (225 ILCS 720/8.05(a) (West 2008)) to challenge site conditions at a coal mine reclaimed in accordance with permits previously approved by the Illinois Department of Natural Resources (IDNR). We also must determine whether the Water Use Act of 1983 (Water Use Act) (525 ILCS 45/1 *et seq.* (West 2008)) allows a private right of action to challenge activity authorized by a mining permit.

-2-

¶ 2        Plaintiff, Citizens Opposing Pollution,[1] brought a six-count amended complaint in the circuit court of Clinton County against defendants ExxonMobil Coal U.S.A., d/b/a Monterey Coal Company (Monterey), and the Illinois Environmental Protection Agency (IEPA), alleging violations of the Mining Act and the Water Use Act resulting from a coal mine reclamation at Monterey's Mine No. 2. The circuit court dismissed plaintiff's amended complaint with prejudice. The appellate court reversed the dismissal as to all five counts directed against Monterey and modified the circuit court's order dismissing the sole count against IEPA to be a dismissal without prejudice. 404 Ill. App. 3d 543. For the reasons that follow, we affirm in part and reverse in part the judgment of the appellate court and affirm the trial court's order.

¶ 3                                    BACKGROUND

¶ 4        In 1977, Monterey began surface and underground coal mining operations at its Mine No. 2 in Clinton County. The Mining Act, which is administered by IDNR, requires that no person shall conduct mining operations without first obtaining a permit from IDNR. 225 ILCS 720/2.01 (West 2008). Each permit application, and application for revision of a permit, must also contain a reclamation plan or revised reclamation plan that meets the requirements set forth by IDNR. 225 ILCS 720/2.03 (West 2008). Monterey operated at the site, relevant to this appeal, two separately permitted coal refuse disposal areas (RDAs). In 1984, the Illinois Department of Mines and Minerals approved Permit No. 57, which authorized the creation of RDA-1.[2] In 1986, the Department approved Permit No. 183, which authorized the creation of RDA-2. The two conjoined RDAs encompass a surface area of approximately 350 acres and contain rock, gravel, sand and other materials that are separated from the coal during coal processing. In 1996, active, ongoing mining operations ended at Mine No. 2. Monterey then began working to permanently close the mine and conduct reclamation work at the site, which included sealing the mine shafts and removing coal mining facilities and equipment.

¶ 5        On December 21, 1999, IEPA, which implements the water quality provisions of the Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 2008)), issued a violation notice to Monterey. The notice alleged that Monterey's coal mining waste disposal areas violated groundwater quality standards for total iron, manganese, sulfate, chloride, and total dissolved soils. Without admitting to the alleged violation, Monterey worked with IEPA, and a corrective action plan which included a groundwater management zone to treat impacted groundwater under and around the two refuse disposal areas was developed and approved by IEPA on June 24, 2002. The plan required, *inter alia*, the installation of an underground bentonite barrier wall and the construction of a treatment system which routes impacted

_____

[1]Plaintiff is a not-for-profit citizen group that was founded by Don Langenhorst in May 2008.

[2]The authority of the Department of Mines and Minerals was transferred to IDNR, effective July 1, 1995. See 20 ILCS 801/10-5 (West 2008).

groundwater from extraction wells through a treatment area before discharging it off site. Monterey was also required to monitor groundwater quality and provide annual reporting to IEPA.

¶ 6 On March 3, 2004, after a public hearing and comment period, IDNR approved revisions to Permit No. 57 and Permit No. 183, which incorporated the corrective action plan with the groundwater management zone, that allowed Monterey to implement and complete reclamation work at Mine No. 2.[3] The terms of the permit revisions provided, in pertinent part: (1) the two RDAs would remain onsite and the interior which contained exposed coal refuse on the surface would be reclaimed with a soil cover and vegetation; (2) a detailed description of the postreclamation land use designations, which specified that the RDAs and the land immediately adjacent to them would constitute "pastureland" as defined in the administrative regulations (see 62 Ill. Adm. Code 1701 app. A (2012)) after completion of the required reclamation work; (3) the final contour of the land would approximate the premining site topography with the exception, in pertinent part, of the two RDAs; and (4) the operation of the groundwater management zone was designed to prevent or mitigate any material damage to the hydrologic balance outside the proposed permit area and minimize the disturbance within the boundaries. Monterey represents that the reclamation project was substantially completed in December 2006, and that it expended more than $28 million to complete the RDA portion of the project alone, which included the construction of the groundwater management zone.

¶ 7 State and Federal Administrative Appeals

¶ 8 On March 29, 2004, Langenhorst filed a request for administrative appeal with IDNR, challenging the department's approval of the revisions to the permits. Langenhorst was later joined in his appeal by other Clinton County residents. They raised, among other issues, whether the proposed remediation plan for the refuse disposal areas was adequate in addressing contamination of the underlying Pearl Sand aquifer. On May 25, 2005, a final administrative decision, which adopted the order of the hearing officer granting summary judgment in favor of Monterey and IDNR, was entered. Concerning the groundwater issue, the hearing officer had found, in pertinent part:

"Petitioners and their expert witness Robert Johnson have admitted the revisions as approved prevent material damage to the hydrologic balance outside the mine property and minimize the disturbance of the hydrologic balance within the boundaries of the mine. That satisfies the regulatory requirements and requires summary judgment in favor of the Department and Monterey."

The petitioners did not seek review of this final administrative decision in the circuit court, as allowed under section 8.10 of the Mining Act (225 ILCS 720/8.10 (West 2008)).

¶ 9 In June 2005, Langenhorst filed a citizen complaint with the United States Department

---

[3]The revised Permit No. 57 and Permit No. 183 expired on January 8, 2005, and October 16, 2006, respectively.

of the Interior, Office of Surface Mining Reclamation and Enforcement (OSM), pursuant to section 1267(h) of the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. § 1267(h) (2006)), requesting that OSM review the adequacy of the reclamation plan at Mine No. 2.[4] OSM accepted as his citizen complaint, among other issues, whether there was a failure to protect the groundwater at the mine site. OSM's Alton Field Division (Field Division) ultimately determined, in pertinent part, that since Monterey was appropriately implementing the state-mandated remedial plan designed to bring about abatement of the existing water violation, IDNR was taking appropriate action to continue enforcing the corrective action plan and had good cause for not taking additional enforcement action. On April 10, 2006, OSM's Regional Director, Mid-Continent Regional Coordinating Center, affirmed the decision of the Field Division. Langenhorst appealed that decision to the Interior Board of Land Appeals, an administrative appeals board in the United States Department of the Interior. On February 20, 2008, the Interior Board of Land Appeals affirmed the decisions of the Regional Director and the Field Division.

¶ 10        On January 4, 2007, Langenhorst filed a second state administrative appeal with IDNR. In December 2006, IDNR had approved an incidental boundary revision to Permit No. 57, which allowed for an additional parcel of land for an underground wastewater discharge pipeline that was necessary to implement the groundwater management zone. Langenhorst challenged whether this underground pipeline was a continuation of mining operations that would require Monterey to comply with additional mining statutory and regulatory requirements. On July 18, 2007, the hearing officer entered summary judgment in favor of Monterey and IDNR. The order also provided, in pertinent part, that "Langenhorst's [s]ummary [j]udgment [m]otion is replete with inaccurate statements and refuted testimony. *** The fact that Mr. Langenhorst is attempting to relitigate issues already decided and encompassed by a previous administrative appeal makes me inclined to consider sanctions against Mr. Langenhorst." As with the first state administrative appeal, Langenhorst did not seek review in the circuit court.


¶ 11                                    Current Lawsuit

¶ 12        On August 8, 2008, plaintiff filed an 18-count complaint against Monterey, IEPA, and IDNR under the citizen suit provision contained in section 8.05(a) of the Mining Act. The complaint sought, in pertinent part, to declare that the reclamation plan contained in the revised permits did not comply with the performance standards of the Mining Act by allowing Monterey to permanently retain the two impoundments of coal mine waste at the site. Plaintiff sought to require Monterey to submit a permit renewal application that would comply with all of the requirements of the Mining Act and IDNR's regulations. In response to defendants' motions to dismiss, plaintiff filed motions for leave to file an amended

---

[4]IDNR has direct responsibility for the review of coal mining and reclamation plans in Illinois. See 225 ILCS 720/2.01, 2.02, 2.03 (West 2008). OSM in an oversight role has the responsibility of enforcing the same standards on a mine-by-mine basis if the state agency fails to do so. See 30 U.S.C. § 1271(a)(1) (2006).

-5-

complaint and for the voluntary dismissal of IDNR. The trial court granted the motions.

¶ 13    Plaintiff filed the instant six-count amended complaint on December 22, 2008. In count I, plaintiff alleged, in pertinent part, that Monterey violated section 3.03 of the Mining Act by failing to restore the land where the two RDAs were situated to a condition capable of supporting the same use or a higher or better use than before mining. In count II, plaintiff alleged, in pertinent part, that Monterey violated section 3.08(b) of the Mining Act by permanently retaining impoundments of coal mine waste at the site. In count III, plaintiff alleged, in pertinent part, that Monterey had permanently graded Mine No. 2 in a manner that failed to restore the affected land to its approximate original contour, as required by section 1.03(a)(2) of the Mining Act. In count IV, plaintiff alleged, in pertinent part, that Monterey disturbed the hydrologic balance and failed to protect the quality and quantity of the groundwater by permanently retaining the two impoundments of coal waste in violation of section 3.10(a) of the Mining Act. In count V, plaintiff alleged, in pertinent part, that IEPA violated section 4.09 of the Mining Act by developing and approving the groundwater management zone because it negatively impacted the quality and quantity of the groundwater at the site. Finally, in count VI, plaintiff alleged, in pertinent part, that Monterey was not complying with the Water Use Act by failing to follow the rule of "reasonable use," as provided in section 6 (525 ILCS 45/6 (West 2008)), by pumping excessive quantities of groundwater from the Pearl Sand aquifer. Specifically, plaintiff alleged that Monterey in order to comply with the corrective action plan approved by IEPA must pump 4 million gallons of water from the aquifer each week, which exceeds Monterey's fair share for the size of its facility.

¶ 14    In all five counts against Monterey, plaintiff sought injunctive relief to require Monterey to remove the permanent impoundments known as RDA-1 and RDA-2 and to dispose of the waste contained therein off site. In count V, plaintiff sought the immediate revocation of the groundwater management zone and a ruling that any future groundwater management zone developed by IEPA for the site must comply with the Mining Act. In count VI, plaintiff sought to require Monterey to develop and implement a written plan that limits the extraction of groundwater at the site to no more than 100,000 gallons per day. In all six counts, plaintiff sought costs, fees, and any other relief the court deemed appropriate.

¶ 15    Monterey moved to dismiss counts I through IV of the amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)) and count VI pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)). IEPA moved to dismiss count V under sections 2-615 and 2-619 of the Code.

¶ 16    On April 28, 2009, the trial court dismissed plaintiff's amended complaint on all counts with prejudice and entered an order which provided, in pertinent part:

       "All parties agree that in order to operate the mine [Monterey] had to and did obtain a permit from [IDNR]. All parties agree that the permit does provide for a reclamation plan. Under the Act the permit and the reclamation plan are not approved unless IDNR finds that all statutory requirements are met. Plaintiff concedes that it has no evidence to show that either [Monterey] or IEPA is violating the terms of the permit or the terms of the reclamation plan. *** [Section 8.10 of the Act] provides

that final administrative decisions of [IDNR] shall be subject to judicial review pursuant to the Administrative Review Law ***. Plaintiff concedes that the time to challenge the permit which included the reclamation plan has expired, but plaintiff argues that 8.05(a) authorizes a suit for any violation of the Act by any aggrieved person. The court disagrees with plaintiff's assertion that 8.05(a) allows a suit to challenge what IDNR has previously approved through approval of the permit and reclamation plan. *** The court is persuaded by IEPA's argument that it is not a violator of the Act since at best it simply approved a groundwater management zone that was incorporated into the terms of a permit reclamation plan. The court's understanding of [the Act] is that IDNR issues permits, and that permits and permit revisions include reclamation plans. To the extent that the groundwater management zone approved by IEPA is at all relevant, it is only relevant within the context of IDNR's approval of the permit revision and reclamation plan. *** [Monterey's] *** motion to dismiss count VI is granted. The Water Use Act provides no private right of action."

¶ 17 The appellate court reversed the trial court and held that counts I through IV and count VI against Monterey were allowed under section 8.05(a) because those counts alleged various ongoing violations of the Mining Act. The appellate court concluded that plaintiff was not collaterally attacking permitted activity in those counts because there was no dispute that the permits had expired. As for count V, the appellate court concluded that the allegation that IEPA violated the Mining Act by authorizing the groundwater management zone could also proceed under section 8.05(a). The appellate court held, however, that to the extent that portions of count V constitute a collateral attack on the previously issued permits, the trial court was correct in dismissing it. Concerning count VI, without conducting any significant analysis, the appellate court concluded that the Water Use Act provides a private right of action because "section 8.05 of the [Mining Act] specifically allows such enforcement actions." 404 Ill. App. 3d at 556.

¶ 18 The appellate court also rejected defendants' argument that plaintiff's action was barred by *res judicata* and collateral estoppel due to the state and federal administrative appeals. The appellate court reasoned that "Exxon" was not a party to the previous litigation and plaintiff's claims involved allegations of ongoing environmental concerns. Additionally, the appellate court rejected defendants' argument that IDNR was a necessary party to this case and concluded that upon remand IDNR could be added by either Monterey or IEPA, or the department could seek to intervene. Consequently, the appellate court reversed the dismissal as to the five counts against Monterey and modified the dismissal of the sole count against IEPA to be without prejudice. 404 Ill. App. 3d at 558.

¶ 19 Monterey and IEPA both filed petitions for leave to appeal that were allowed by this court, which consolidated the cases. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We also allowed IDNR and the Illinois Coal Association to file *amicus curiae* briefs on behalf of Monterey and IEPA. In addition, we allowed the Illinois Chapter of the Sierra Club to file a brief *amicus curiae* on behalf of plaintiff.

¶ 20                                        ANALYSIS

¶ 21        Monterey and IEPA contend that the appellate court erred in reversing the dismissal of counts I through V of the amended complaint because the citizen suit provision contained in section 8.05(a) of the Mining Act does not allow a party to challenge the terms, conditions, and activities authorized in, and required by, a mining permit. They contend that under section 8.10 of the Mining Act, the Administrative Review Law is the exclusive route for a citizen to obtain timely judicial review of a final permit decision by IDNR. Plaintiff counters that section 8.05(a) allows a party to file a citizen suit at any time to enforce site conditions that do not comply with the requirements of the Mining Act, regardless of whether those conditions conform to the terms of the mining permit. Plaintiff argues that the substantive provisions of the Mining Act "cannot be overridden by the implementation of illegally issued permits that leave the site out of compliance with the authorizing legislation."

¶ 22        Section 2-619(a) of the Code of Civil Procedure allows dismissal where, in pertinent part, "the action was not commenced within the time limited by law" (735 ILCS 5/2-619(a)(5) (West 2008)) and where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) challenges only the legal sufficiency of the complaint. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Under either section of the Code, our review proceeds *de novo. Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 266 (2003).

¶ 23        The issue before us requires us to consider the interplay between section 8.05(a) and section 8.10 of the Mining Act, which constitutes a matter of statutory construction that we also review *de novo. Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000). The goal of statutory construction is to ascertain and give effect to the legislature's intent. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). The best indication of this intent remains the language of the statute itself, which must be given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). In interpreting a statute, this court presumes that the legislature did not intend absurdity, inconvenience, or injustice. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992).

¶ 24        Under the doctrine of *in pari materia*, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). The doctrine is consistent with our acknowledgment that one of the fundamental principles of statutory construction is to view all of the provisions of a statute as a whole. *Id.*

¶ 25        Section 8.05(a) of the Mining Act contains the citizen suit provision relied upon by plaintiff. It states as follows:

> "Civil Actions. (a) Any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this Act against any governmental instrumentality or agency which is alleged to be in violation of the provisions of this Act or of any rule, order or permit issued under this Act, or against any other person who is alleged to be in violation of this Act or of any rule, order or permit issued under this Act. No action may be commenced

under this subsection (1) prior to 60 days after the plaintiff has given notice in writing of the alleged violation to the Department and to any alleged violator, or (2) if the State has commenced and is diligently prosecuting a civil action to require compliance with the provisions of this Act, or any rule, order or permit issued under this Act." 225 ILCS 720/8.05(a) (West 2008).

¶ 26　　Section 8.10 of the Mining Act, relied upon by defendants, provides for review of all final administrative decisions of IDNR under the Administrative Review Law. It states as follows:

> "Review under Administrative Review Law. All final administrative decisions of the Department under this Act shall be subject to judicial review pursuant to the Administrative Review Law, as amended, and the rules adopted under it, except that the remedies created by this Act are not excluded or impaired by any provision of the Administrative Review Law." 225 ILCS 720/8.10 (West 2008).

¶ 27　　In construing the two statutory provisions at issue, we emphasize that the first clause of section 8.10 specifically provides that "[a]ll final administrative decisions of the department *shall be subject to judicial review pursuant to the Administrative Review Law*." (Emphasis added.) It is undisputed that a final administrative decision by IDNR on a mining permit constitutes a final administrative decision of the department that is subject to judicial review under section 8.10. In contrast, section 8.05(a) provides, in pertinent part, that a citizen suit may be brought to "compel compliance with this Act" or to enforce compliance with a "permit issued under this Act." Consequently, we agree with the trial court that section 8.05(a), read *in pari materia* with section 8.10, requires that the administrative review process is the exclusive route for circuit court review of the terms of a mining permit issued by IDNR. However, an action to compel compliance with the Mining Act for nonpermitted activity, or to enforce compliance with the terms of a permit, may be brought by way of an original action in the circuit court under section 8.05(a).

¶ 28　　Plaintiff does not challenge in its amended complaint Monterey's compliance with any provision contained in the revised permits issued by IDNR. Instead, plaintiff attacks the terms of those permits under which the reclamation work was completed as not complying with the Mining Act. As previously recognized, a final administrative decision by IDNR authorizing a mining permit is a final administrative decision of the department that is subject to judicial review pursuant to the Administrative Review Law. Section 3-103 of the Administrative Review Law provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2008). Section 3-102 of the Administrative Review Law provides that "[u]nless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." 735 ILCS 5/3-102 (West 2008). Langenhorst did not seek timely judicial review of the provisions of the revised permits pursuant to the Administrative Review Law after they were approved in 2004, and the citizen group that he founded in 2008 cannot do so now under section 8.05(a).

-9-

¶ 29　　Plaintiff asserts that section 8.10 does not preclude it from bringing its amended complaint under section 8.05(a) because the "except that" language contained in the second clause of section 8.10 authorizes a citizen suit to challenge permitted activity whenever site conditions do not comply with the Mining Act. We disagree and construe the second clause of section 8.10 as allowing a citizen suit under section 8.05(a), such as to enforce the provisions of a permit, or to challenge nonpermitted activity, without being impaired by any of the requirements of the Administrative Review Law. This interpretation is consistent with our obligation not to construe a statute in a way that makes one of its provisions redundant and superfluous. *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n*, 88 Ill. 2d 22, 28 (1981). Plaintiff's construction of section 8.10 would eviscerate and render meaningless the "shall" provision contained in the first clause of the statute by making adherence to the Administrative Review Law entirely optional and nonbinding in the case of a final permit determination by IDNR. This interpretation would be inconsistent with the Administrative Review Law, which specifically requires prompt judicial review of such final administrative decisions.

¶ 30　　Our construction of sections 8.05(a) and 8.10 is also supported by the realities of the mining permit process and judicial review of such regulatory decisions. IDNR's authority in the permit process, which the legislature specifically delegated to the department (see 225 ILCS 720/2.01, 2.02, 2.03 (West 2008)), would be undermined if we were to interpret section 8.05(a) as allowing a party to file an original cause of action in the circuit court challenging the terms of a mining permit. The Mining Act stipulates that no permit or revised permit shall be issued unless the application affirmatively demonstrates, and the *department finds*, *inter alia*, that: (1) the application is accurate and complete and all requirements of the Mining Act have been complied with; (2) the applicant has demonstrated the reclamation can be accomplished and complies with the performance standards set forth in the statute; (3) the proposed mining operation has been designed to prevent material damage to the hydrologic balance outside the permit area; and (4) the area proposed to be mined is not included within an area designated unsuitable for surface coal mining under the Mining Act. 225 ILCS 720/2.08(b) (West 2008).

¶ 31　　Plaintiff's suggested construction of the statute would require the circuit court to determine such highly regulated mining operation and reclamation issues without an administrative record to review. See 62 Ill. Adm. Code 1847.3 (2012) (permit and related administrative hearings). A contrary construction of the statute would also impact legitimate reliance by a permittee, and create significant uncertainty by allowing the terms of a permit to be reopened and reconsidered at any time, even years after a reclamation project has been completed in accordance with a permit. We decline to conclude that the legislature intended such an absurd result in enacting section 8.05(a), which would not only call into question the finality of mining permit decisions throughout Illinois, but would undermine the role of IDNR in the permit process.

¶ 32　　We note, as demonstrated by the state and federal administrative appeals brought by Langenhorst, that a party who may be adversely affected by a mining permit decision is afforded opportunities to raise objections at the state level before IDNR and at the federal level before OSM. As recognized by IDNR in its *amicus* brief, any person having an interest

which is or may be adversely affected by a permit decision of the department may file written objections to a permit application and request an informal conference on the application with IDNR. 225 ILCS 720/2.04(d) (West 2008). If no informal conference is requested, or if the issues in question are not resolved by the informal conference, a public hearing may be called at which time the interested person has an opportunity to submit oral or written testimony and his or her views or arguments. 225 ILCS 720/2.04(d), (e) (West 2008); 62 Ill. Adm. Code 1773.14(d) (2012). An interested person may also request an adjudicatory hearing to challenge IDNR's decision on a mining permit. 225 ILCS 720/2.11(c) (West 2008). After the interested person is notified of the hearing officer's recommended decision, he or she may submit exceptions. 62 Ill. Adm. Code 1847.3(i) (2012). Thereafter, the person may seek judicial review of the final permit decision pursuant to the Administrative Review Law. 225 ILCS 720/8.10 (West 2008); 62 Ill. Adm. Code 1847.3(l) (2012). Consequently, our construction of the statute does not preclude a party from raising objections to IDNR's permit decisions and seeking judicial review thereafter. We simply recognize that any objection must be raised in a timely manner through the administrative review process and may not be brought through an original action in the circuit court under section 8.05(a).

¶ 33     We further note that IDNR is required to conduct periodic review of outstanding permits and may require reasonable revision or modification of permit provisions during the term of such permit if necessary to insure that a coal mine complies with all of the requirements of the Mining Act. 225 ILCS 720/2.10 (West 2008). Additionally, under the administrative code, if IDNR receives information indicating that it improvidently issued a mining or reclamation permit, the department is required to review the circumstances under which the permit was issued, and undertake remedial measures, including suspension or rescission of the permit using the criteria set forth in the regulations See 62 Ill. Adm. Code 1773.20, 1773.21 (2012).

¶ 34     Plaintiff's argument that section 8.10 does not apply because the revised permits expired more than two years before it filed its original complaint does not change our determination. Pursuant to the administrative code, "[a] permittee need not renew the permit if no surface coal mining operations will be conducted under the permit and solely reclamation activities remain to be done." 62 Ill. Adm. Code 1773.11(a) (2012). The regulations further provide that "[o]bligations established under a permit continue until completion of surface coal mining and reclamation operations, regardless of whether the authorization to conduct surface coal mining operations has expired." *Id.* Consequently, there was no requirement for Monterey to renew the permits because, as is undisputed, only reclamation activities remained to be completed after the permits expired in January 2005 and October 2006. Following the expiration of the permits, Monterey's obligation to complete the reclamation work in accordance with the permits remained unchanged and did not provide plaintiff with a new basis to challenge the terms of the revised permits.

¶ 35     Likewise, plaintiff's reliance on *Old Ben Coal Co. v. Department of Mines & Minerals*, 207 Ill. App. 3d 1088 (1991), is misplaced. In that case, the Illinois Department of Mines and Minerals brought an enforcement action against a coal mine company that was operating under an interim permit that was issued prior to the state's more stringent permanent mining regulations being implemented. *Id.* at 1089-90. The coal company argued that because it was

operating under an interim permit it was not bound by the permanent mining regulations. *Id.* at 1091. The appellate court rejected this argument and concluded that the statutory language that all operators "as a minimum" must comply with the Mining Act's performance standards did not exempt interim permittees from the permanent regulations. *Id.* at 1091-92. The issue before this court is not related to the applicability of a new set of regulations after the approval of the revised permits. Instead, this case involves the implementation of standards under the Mining Act which have not changed since the revised permits were approved by IDNR in 2004.

¶ 36　　Plaintiff appears to argue, in the alternative, that its amended complaint should be allowed based upon a right to a healthful environment contained in article XI of the Illinois Constitution of 1970, which provides that "the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations." Ill. Const. 1970, art. XI, § 1. Article XI, section 2, gives private citizens the right to "enforce this right against any party, governmental or private." Ill. Const. 1970, art. XI, § 2. As this court has previously explained, however, "[s]ection 2 of article XI does not create any new causes of action but, rather, does away with the 'special injury' requirement typically employed in environmental nuisance cases." *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 85 (1995); see also *Glisson v. City of Marion*, 188 Ill. 2d 211, 228 (1999). Therefore, although plaintiff need not allege a special injury to bring its environmental claim, there must nevertheless still exist a cognizable cause of action. *City of Elgin*, 169 Ill. 2d at 85-86.

¶ 37　　For the reasons stated, we find the trial court properly dismissed counts I through V of plaintiff's amended complaint with prejudice because those counts constitute a challenge to the provisions of the revised permits authorized by IDNR and could not be brought under section 8.05(a) of the Mining Act.

¶ 38　　As noted earlier in this opinion, the appellate court affirmed the circuit court's dismissal of count V, holding that to the extent portions of the count constitute a collateral attack on the previously issued permits, the circuit court was correct in dismissing it. We agree with the appellate court's affirmance of the circuit court's dismissal and thus affirm that part of the appellate court's judgment. However, the appellate court further modified the circuit court's dismissal to be without prejudice and remanded with directions that plaintiff be allowed to file an amended count V. Because the circuit court properly dismissed count V with prejudice, that part of the appellate court's judgment which modified and remanded the circuit court's order dismissing count V is reversed.

¶ 39　　Based upon our determination that counts I through V could not be brought under section 8.05(a) of the Mining Act and thus were properly dismissed, there is no need for us to address Monterey and IEPA's alternative argument that plaintiff's claims are barred under *res judicata* and collateral estoppel based on the state and federal administrative appeals. There is also no need for us to consider Monterey's contention that the appellate court erred in concluding that IDNR was not a necessary party to this case, or IEPA's contention that it was not a violator of the Mining Act by its approval of the groundwater management zone.

¶ 40　　Finally, we consider whether the appellate court erred in reversing the dismissal of count VI of the amended complaint against Monterey. This requires us to consider whether the

Water Use Act authorizes a private right of action to challenge activity specifically required by a permit approved by IDNR under the Mining Act.

¶ 41 The Water Use Act declares it to be in the public interest to better manage and conserve water, to establish a mechanism for restricting withdrawals of groundwater in emergencies, and to provide public notice of planned substantial water withdrawals from new points before water is withdrawn. 525 ILCS 45/2 (West 2008). The Water Use Act also follows the doctrine of reasonable use for groundwater withdrawals. 525 ILCS 45/6 (West 2008). Reasonable use means "the use of water to meet natural wants and a fair share for artificial wants. It does not include water used wastefully or maliciously." 525 ILCS 45/4 (West 2008). The statutory framework includes a limited complaint investigation and review process managed by the Department of Agriculture and local soil and water conservation districts, an administrative hearing and appeal process, and a penalties provision. 525 ILCS 45/5.1, 7 (West 2008).

¶ 42 Plaintiff alleged in count VI, in pertinent part, that Monterey failed to follow the rule of reasonable use as provided in section 6 of the Water Use Act because in order for Monterey to comply with the corrective action plan incorporated in the revised permit it must pump 4 million gallons of water from the aquifer each week. Plaintiff sought injunctive relief to require Monterey to develop and implement a written plan that would require the extraction of less than 100,000 gallons of groundwater per day. As in the other counts, plaintiff also sought to require Monterey to remove the two RDAs from the site. Plaintiff therefore seeks the same injunctive relief in count VI that we have already determined in the other five counts constitutes an attack on the terms of the permits that is not allowed under section 8.05(a) of the Mining Act. Similar to our determination under section 8.05(a), we find no statutory basis to conclude that the Water Use Act allows a private right of action to challenge conduct that is specifically mandated by the terms of a permit authorized by IDNR. See *Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (2004) (implication of a private right of action from a statute is appropriate if the plaintiff is a member of the class for whose benefit the statute was enacted; the plaintiff's injury is one the statute was designed to prevent; it is consistent with the underlying purpose of the statute; and it is necessary in order to provide an adequate remedy for violations of the statute). Plaintiff's reliance on *Bridgman v. Sanitary District of Decatur*, 164 Ill. App. 3d 287 (1987), is misplaced and does not inform our analysis as that case did not concern a cause of action under the Water Use Act to challenge permitted activity under the Mining Act. Consequently, we find the appellate court also erred in reversing the dismissal of count VI of the amended complaint.

¶ 43                                    CONCLUSION

¶ 44 For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part and the judgment of the circuit court is affirmed.

¶ 45 Appellate court judgment affirmed in part and reversed in part;

¶ 46 circuit court judgment affirmed.